ACTIESSELSKABET ALBIS v. ARRUE.

(District Court, S. D. New York. December 8, 1909.)

SHIPPING (§ 51*)—CHARTER PARTY—LOSS OF TIME OF VESSEL—LIABILITY.

The contract provides that the vessel should be under the orders of the charterer but when negotiations were taking place for the renewal of the charter, the owner was communicated with by its agents in New York and it instructed them to wire the vessel to sail. *Held,* that the sending of the cable was at the risk of the owner and it should bear the loss consequent upon the nondelivery.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 51.*]

(Syllabus by the Judge.)

Action by Actiesselskabet Albis against Miguel S. Arrue to recover a balance of charter hire. Libel dismissed.

Wheeler, Cortis & Haight, for libellant.

Gibson & Hulbert, for respondent.

ADAMS, District Judge. The libellant, Actiesselskabet Albis, the owner of the steamship Albis, brings this action to recover from Miguel S. Arrue, a balance of charter hire, amounting to $414.27, under a continuation of a charter party, dated August 4, 1906. The respondent deducted this amount, on account of alleged lost time from September 11, 1906, at 9 a. m. to September 15, 1906, at 2 p. m.

The answer admits the making of the contract and further alleges:

"Fourth: That the respondent in pursuance of said charter notified the libellants on or about September 1st, 1906, that he would redeliver the said steamship Albis to them at Guantanamo on her arrival there and the discharge of her cargo, which would be on or about September 10th, 1906, that the said steamship did arrive at Guantanamo and her cargo was discharged on or about September 10th, 1906 and said steamship was redelivered to the libellants and her delivery was accepted by them on or about September 10th, 1906 and that thereafter and on the said September 10th, 1906, the respondent entered into an agreement with J. H. Winchester & Company, as agents for the libellants, a copy of part of which agreement is annexed and made part of the libel, and endorsed on the back of Libellants' Exhibit A; that the part of said agreement omitted from the said endorsement on the back of the Exhibit 'A' was 'that the said agents would direct the captain or master in charge of the said steamship Albis by cable that day, September 10th, 1906 that as soon as she had discharged her cargo at Guantanamo to proceed immediately to Baracoa and take on a cargo of fruit for the respondent for shipment to New York': that the said agents of the libellants did not direct the captain or master of the said steamship Albis by cable on September 10th, 1906 as they agreed as aforesaid and the said steamship instead of sailing from Guantanamo on the afternoon of September 10th, 1906, at which time her cargo was discharged the said agents of the libellants did not cable the captain or master of the said steamship Albis until on or about September 15th, 1906, more than four days after the cargo of the said steamship had been discharged, to proceed to Baracoa and take on a cargo of fruit for the respondent; that the respondent, relying upon the said agreement that the agents of the libellant would cable the captain or master of the said steamship Albis on September 10th, 1906 to proceed immediately to Baracoa on the discharge of her said

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cargo at Guantanamo and that said steamship would sail from Guantanamo on the evening of the 10th or the morning of the 11th of September, 1906 and would arrive at Baracoa on September 12th, 1906, instructed his agents at Baracoa to have a cargo of bananas cut and ready for shipment by the said steamship Albis on September 13th, 1906, which was done, but through the carelessness, neglect and default of the libellants and their said agents, the said steamship did not arrive at Baracoa until September 16th, 1906 and the said cargo of fruit was greatly injured by the four days delay of shipment on the said steamship Albis for New York, without any neglect, carelessness or default on the part of the respondent by which he sustained damages to the amount of Four hundred fourteen and 27/100 Dollars.

Fifth: That on or about October 4th, 1906, and before the commencement of this action and the filing of the libel herein the libellants and their agents and the respondent settled and compromised the claim sued for in the libel herein and the libellants discharged and released the respondent from the same and accepted and received satisfaction and payment thereof."

\* \* \* \* \* \* \* \* \* \* \*

"Fifth A: That the libellant, a foreign stock corporation, was doing business in the State of New York on August 4th, 1906, contrary to the provisions of Section 15 of the General Corporation Law of said State of New York, being the Laws of 1892, Chapter 687, and the acts supplemental thereto and amendatory thereof. That the said action is upon a contract made by the libellant, a foreign stock corporation in the State of New York, on the 4th day of August 1906, and since September 1st, 1901. That prior to the making of such contract the said libellant being a foreign stock corporation, had not procured from the Secretary of State of the State of New York a certificate that it had complied with all the requirements of law to authorize it to do business in the State of New York, and that the business of the corporation carried on in this State is such as may be lawfully carried on by a corporation incorporated under the laws of this State for such or similar business, or, if more than one kind of business, by two or more corporations so incorporated for such kind of business respectively."

The testimony shows that a clerk of Winchester & Company, the agents of the libellants, deceased at the time of the trial, informed the respondent, when a conference was in progress just prior to the renewal of the charter, in reply to a statement by the latter, that if the clerk would cable to the steamer, the respondent would sign the contract. This the clerk agreed to do. Of course if there were nothing further the libellant would not be bound by the clerk's statement, as it evidently was unauthorized, but it appears that cables were being exchanged at the time and the owner sent the following to Winchester & Company:

"Albis, have done our utmost with your offer, and best we can do is as follows: Direct continuation, Captain telegraphs, she will be discharged today, she is awaiting your orders, please wire definite orders and instructions to master and us."

It therefore appears that instructions were to be sent by Winchester & Company to the steamer. This was an obvious modification of the charter provision that the vessel should be under the orders of the charterer and made the sending of the cable a duty of the owner. It probably was sent by Winchester & Company but for some reason was not delivered and in consequence thereof the steamer remained at Guantanamo awaiting orders when she should have been on the way to Baracoa.

It seems to me the loss of time should be borne by the owner. When it undertook to send the cable it assumed the responsibility of non-delivery and the lost time can not be justly charged to the respondent.

This conclusion renders a decision of the other points in the case unnecessary and requires a dismissal of the libel.